IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2017

## STATE OF TENNESSEE v. DAVID VON BROWN

**Appeal from the Circuit Court for Madison County**
**No. 16-3      Roy B. Morgan, Jr., Judge**

_____

### No. W2017-00220-CCA-R3-CD

_____

The Defendant, David Von Brown, was convicted by a Madison County Circuit Court jury of possession of .5 grams or more of cocaine with intent to sell, a Class B felony; possession of .5 grams or more of cocaine with intent to deliver, a Class B felony; two counts of possession of a firearm during the commission of a dangerous felony, Class D felonies; two counts of possession of a firearm during the commission of a dangerous felony by one having a prior felony conviction, Class D felonies; and felon in possession of a firearm, a Class D felony. The trial court merged the two drug convictions and imposed a sentence of twelve years on that conviction; the court merged the four various possession of a firearm during the commission of a dangerous felony convictions and imposed a sentence of five years on that conviction; and the court imposed a sentence of five years on the felon in possession of a firearm conviction. The court ordered that the sentence for the possession of a firearm during the commission of a dangerous felony conviction be served consecutively to the other sentences, which were to be served concurrently, for a total effective term of seventeen years in the Department of Correction. On appeal, the Defendant argues that: (1) the evidence is insufficient to sustain his convictions; (2) the verdict is against the weight of the evidence; and (3) the trial court erred in not considering any mitigating factors in determining his sentences. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in JOHN EVERETT WILLIAMS and J. ROSS DYER JJ., joined.

Terita Hewlett, Memphis, Tennessee (on appeal); and Jeremy Epperson, Jackson, Tennessee (at trial), for the appellant, David Von Brown.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Jerry Woodall, District Attorney General; and Aaron J. Chaplin, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

In a superseding indictment returned on December 28, 2015, the Defendant was charged with possession of .5 grams or more of cocaine with intent to sell or deliver (Counts 1 and 2); possession of a firearm during the commission of a dangerous felony (Counts 3 and 4); possession of a firearm during the commission of a dangerous felony by one having a prior felony conviction (Counts 5 and 6); felony evading arrest (Count 7); reckless driving (Count 8); driving on a canceled, suspended, or revoked license (Count 9); driving on a canceled, suspended, or revoked license – prior offender (Count 10); assault (Count 11); resisting arrest (Count 12); violation of the gang enhancement statute (Counts 13, 14, and 16); and felon in possession of a firearm (Count 15).

Prior to trial, the court granted the State's motion to dismiss Count 8. The court also dismissed Counts 13, 14, and 16, relating to the gang enhancement statute, pursuant to this court's decision in State v. Bonds, 502 S.W.3d 118 (Tenn. Crim. App. 2016). It appears that an earlier trial was held in May 2016, at which the jury found the Defendant guilty as charged in Counts 7, 9, 11, and 12 but was hung on the remaining counts. A few months later, the Defendant entered a guilty plea in Count 10. A retrial was held on the remaining counts, Counts 1 through 6 and 15, in October 2016.

Officer Blake Lambert with the Jackson Police Department testified that he was driving on patrol on June 2, 2014, around 9:00 p.m. when he noticed a vehicle swerve over two lanes of traffic and almost hit two pedestrians. He followed the vehicle for a short time and then activated his blue lights to initiate a traffic stop. The vehicle did not stop but, instead, tried to flee from Officer Lambert by turning onto different roads and driving through the parking lot of a factory before ultimately pulling into a cul-de-sac.

The vehicle pulled into a driveway at the end of the cul-de-sac, and the driver, identified as the Defendant, got out and fled on foot. When the Defendant got out of the car, Officer Lambert noticed that he was carrying something in his hand and "whatever it was was reflecting off of th[e] street light." Officer Lambert chased the Defendant on foot, keeping him in sight the entire time but not specifically looking at his hands.

The Defendant ran to the back of the house at 70 Alpine Cove and unsuccessfully attempted to climb over a fence. Officer Lambert tried to restrain the Defendant, but the Defendant struggled, going so far as to "strik[e] and punch[]" the officer. During the struggle, the two fell into the driveway of 65 Alpine Cove, next to the back passenger side of an older model sedan. Officer Lambert was on top of the Defendant, while the Defendant was either on his stomach or on his hands and knees, attempting to stand up. At no time during the struggle could Officer Lambert see the Defendant's hands because they "were always underneath his body either trying to push up or falling up under him."

Eventually, other officers arrived on the scene, and the Defendant was handcuffed and put in the back of a patrol car. The officers searched the route the Defendant had run from his vehicle to 70 Alpine Cove, looking for whatever had been in the Defendant's hand when he got out of the car. They did not search in the area of 65 Alpine Cove because Officer Lambert was "amped up," and "it just slipped [his] mind" in the aftermath of the struggle. The officers did not find anything in their search that evening. The Defendant was taken to the county jail, where he was booked and found to be in possession of $670.10.

Captain Brian Wilson of the Madison County Sheriff's Office testified that when the Defendant was booked into jail the night of his arrest, he was allowed to make a phone call, and he called Chelsea McNeal.

Lieutenant Rodney Anderson with the Jackson Police Department testified that on June 3, 2014, he noticed the Defendant's name when he reviewed a list of arrests from the previous day. He was familiar with the Defendant and had interacted with him several times. After seeing the various charges brought against the Defendant, Lieutenant Anderson decided to listen to the recordings of the Defendant's jailhouse phone calls to see if the Defendant had discarded anything while fleeing from the police. Based on what Lieutenant Anderson heard on the recordings, he contacted Sergeant Gilley to "find out if he knew who Willoughby's mom was" who was mentioned in the calls. He told Sergeant Gilley what he had heard on the calls and directed him to an address on Alpine Cove to look for the items that were mentioned. However, Sergeant Gilley did not locate anything.

Lieutenant Anderson continued listening to the Defendant's jailhouse phone calls and, based on what he heard, directed Sergeant Gilley to specifically "look in front of the house underneath the car." Lieutenant Anderson learned that Sergeant Gilley recovered a handgun and two bags of cocaine from underneath a white car at 65 Alpine Cove. Lieutenant Anderson acknowledged that, on the phone call, the Defendant said, "[G]o to the front of Willoughby's mom's house . . . [and] check underneath the car," but he did not specifically reference drugs or a gun.

Sergeant Samuel Gilley with the Jackson Police Department testified that in response to a call from Lieutenant Anderson, he "went by a residence that belonged to a Willoughby's mother" to "search for . . . possible contraband that had been discarded." He looked around the area at 70 Alpine Cove but did not find anything. Later, he received another call from Lieutenant Anderson directing him to search "in the area . . . across the street from Willoughby's mother's house." Sergeant Gilley observed "an old car in the driveway" of 65 Alpine Cove and saw cocaine and a firearm under the car. Sergeant Gilley noted that the amount of cocaine and the way it was packaged, as well as the Defendant's having a large amount of cash in his possession when he was booked but "no gainful employment," were indicative of the drugs being for resale and not personal use. Sergeant Gilley also noted that a "firearm is a tool of necessity to a drug dealer, especially a cocaine dealer, in order to protect your life against would-be robbers who are out to get your product or the large amount of cash that you have."

Investigator Andy Smith with the Madison County Sheriff's Office testified that he assisted Sergeant Gilley in recovering the evidence, "a pistol . . . and some bags of cocaine and crack," on Alpine Cove. He recalled that the items "were all under the car together." There was a live round in the chamber of the gun. Based on his experience, Investigator Smith surmised that the amount of cocaine and the way it was packaged were indicative of it being "[p]ackaged for resale or distribution." Investigator Smith additionally noted that, based on his experience, individuals involved in the sale of narcotics often use firearms "[t]o protect them from being robbed and other dealers or such taking their dope and money."

Special Agent Brock Sain, a forensic scientist with the Tennessee Bureau of Investigation, "TBI," tested the substance recovered from 65 Alpine Cove and confirmed that it was cocaine and that it weighed at least .5 grams. On cross-examination, Special Agent Sain agreed that the TBI had facilities for testing DNA and fingerprints, but it was only requested that he conduct an analysis on the narcotics.

The State entered a certified copy of a judgment from December 17, 2007, in which the Defendant pled guilty to the Class B felony of possession of .5 grams or more of cocaine with the intent to sell or deliver.

The Defendant called Sergeant Brian Spencer with the Jackson Police Department who testified that he requested for a DNA swab from the Defendant and the firearm retrieved in the case be submitted to the TBI crime laboratory for DNA testing. However, his request was denied because of the nature of the charge, felon in possession of handgun, against the Defendant. Sergeant Spencer said that he also requested

ballistics testing on the gun, and such was conducted. Because of the ballistics testing, fingerprint testing would have been impossible.

Following the conclusion of the proof, the jury convicted the Defendant as charged.

## ANALYSIS

### I. Sufficiency

The Defendant argues that the evidence is insufficient to sustain his convictions because there was no direct evidence linking him to the handgun and drugs that were found in the area after his arrest. When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

To establish the elements of Counts 1 and 2, the State had to show that the Defendant knowingly possessed cocaine with the intent to sell or deliver it. Tenn. Code Ann. § 39-17-417(a)(4).

To establish the elements of Counts 3 through 6, the State had to show that the Defendant possessed a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony, i.e., the possession of cocaine offenses in Counts 1 and 2. Id. § 39-17-1324(a), (i)(1)(L). With respect to Counts 5 and 6, the State had to show the additional element that the Defendant had a prior felony conviction. Id. § 39-17-1324(g)(2).

To establish the elements of Count 15, the State had to show that the Defendant unlawfully possessed a firearm after having been convicted of a felony drug offense. Id. § 39-17-1307(b)(1)(B).

Officer Lambert testified that when the Defendant got out of the car and fled on foot, he noticed that the Defendant was carrying something reflective in his hand. Officer Lambert pursued the Defendant, and the two eventually ended up in a struggle in the driveway of 65 Alpine Cove, next to the back passenger side of an older model sedan. Officer Lambert could not see the Defendant's hands at any time because they were under his body while Officer Lambert was on top of the Defendant trying to subdue him. Lieutenant Anderson testified that he listened to recordings of phone calls the Defendant placed from jail and sent officers to Alpine Cove to search around "Willoughby's mom's

- 6 -

house" and to "check underneath the car," as referenced in the calls. Sergeant Gilley and Investigator Smith testified that they went to Alpine Cove and, upon inspecting the back passenger side of an older model sedan at 65 Alpine Cove, found two bags of cocaine and a handgun. The officers stated that the amount of cocaine and the way it was packaged, as well as the Defendant's having a large amount of cash in his possession when he was booked but "no gainful employment," were indicative of the drugs being for resale and not personal use. The officers also noted that a firearm was a "tool of necessity" for a drug dealer.

Based on this evidence viewed in the light most favorable to the State, a rational trier of fact could have determined that the Defendant was in the possession of the drugs and handgun at the time he was fleeing from Officer Lambert and had discarded them under the sedan during the struggle. A rational trier of fact could have also determined that the Defendant was in possession of the drugs with the intent to sell or deliver them and that, at the same time, he was in possession of the handgun with the intent to go armed. A rational trier of fact could have further determined that the Defendant had a prior felony drug conviction. The Defendant criticizes the State's proof essentially because it was circumstantial in nature, as no drugs or weapon were found on his person and no one saw him in direct possession of such. However, circumstantial evidence is treated no differently than direct evidence. See Dorantes, 331 S.W.3d at 380-81. The Defendant is not entitled to relief.

## II. Weight of Evidence

The Defendant next alleges that the weight of the evidence is against the verdict. He points to the trial judge's duty to "weigh the evidence himself as if he were a juror and determine for himself the credibility of the witnesses and the preponderance of the evidence." The Defendant does not argue that the trial court did not fulfill its duty as the thirteenth juror in weighing the evidence. Instead, he essentially reiterates the same argument that there was no evidence linking him to the drugs and gun found by the officers and asserts that the trial court should have reached a different conclusion than the jury.

Rule 33(d) of the Tennessee Rules of Criminal Procedure provides that a "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the *weight* of the evidence." (Emphasis added). The rule imposes a mandatory duty on the trial judge to act as the thirteenth juror in every criminal case. See State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). The rule requires that the trial judge be personally satisfied with the verdict, see State v. Dankworth, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995), and its purpose is "to be a 'safeguard . . . against a miscarriage of justice by the

jury.'"  State v. Price, 46 S.W.3d 785, 823 (Tenn. Crim. App. 2000) (quoting State v. Moats, 906 S.W.2d 431, 434 (Tenn. 1995)).

> Rule 33 is in stark contrast to Tennessee Rule of Criminal Procedure 29, which requires a trial court to "order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is *insufficient* to sustain a conviction of such offense or offenses."

State v. Ellis, 453 S.W.3d 889, 898 (Tenn. 2015) (quoting Tenn. R. Crim. P. 29(b)).

In fulfilling its duty as thirteenth juror, the trial court does not have to make an explicit statement on the record.  Moats, 906 S.W.2d at 434.  Instead this court may presume by the trial court's overruling of the motion for new trial that it approved of the jury's verdict.  Id.  If, however, "the record contains statements by the trial judge expressing dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or statements indicating that the trial court absolved itself of its responsibility to act as the thirteenth juror[,]" the reviewing court may reverse the trial court's judgment. Carter, 896 S.W.2d at 122.

The record shows that the trial court fulfilled its duty as thirteenth juror.  The court issued an order denying the Defendant's motion for new trial; thus, we can presume from the denial that the judge approved the verdict.  Id.  In addition, in its written order, the trial court specifically found that "[t]he verdict was not against the weight of the evidence."  The Defendant appears to debate the trial court's weighing of the evidence. However, once the trial court fulfills its duty as the thirteenth juror and imposes a judgment, appellate review is limited to determining the sufficiency of the evidence. Moats, 906 S.W.2d at 435 (citing State v. Burlison, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993)).  As already determined above, the evidence is sufficient to support the verdicts.

### III.  Sentencing

The Defendant argues that the court erred in failing to consider any mitigating factors in determining his sentences.

A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

At the sentencing hearing, defense counsel asked the court to rely on "the catchall [mitigating] factor," as well as the Defendant's employment history. On appeal, the Defendant additionally asserts that the trial court should have considered that his conduct did not cause or threaten serious bodily injury. In imposing the Defendant's sentence, the trial court noted the statutory considerations it was taking into account, including "all the mitigating and enhancing factors." Later, the trial court specifically stated, "I do not even find under the catchall . . . that a mitigating factor would apply, and I've considered the principles and guidelines for sentencing and there are just no mitigating factors to put in this case on behalf of the Defendant[.]" The record shows that the trial court properly considered the enhancement and mitigating factors and the principles and purposes of sentencing before imposing sentences within the applicable range for the Defendant's convictions. Accordingly, we affirm the sentences imposed by the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE